**Randy L. MAY**

v.

**Howard W. CARLTON, Warden.**

Supreme Court of Tennessee,
at Knoxville.

Sept. 6, 2007 Session.

Jan. 18, 2008.

Todd A. Shelton, Greeneville, Tennessee, for the appellant, Randy L. May.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and Leslie E. Price, Assistant Attorney General for the appellee, State of Tennessee.

## OPINION

GARY R. WADE, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER, JJ., joined. WILLIAM C. KOCH, JR., J., with whom CORNELIA A. CLARK, J., joins, dissenting.

Incident to a conviction for first degree murder, the petitioner was declared infamous, a status which involves the loss of rights of citizenship, including the right to vote. At the time of the offense, homicide was not listed as an infamous crime under the statute. We granted permission to appeal to determine whether the judgment could be corrected through the writ of habeas corpus. Because the illegal disenfranchisement of the petitioner qualifies as a "restraint on liberty," a threshold requirement under our statute, we grant limited habeas corpus relief but uphold the underlying conviction and the term of incarceration. The opinion of the Court of Criminal Appeals is reversed, and the cause is remanded to the trial court for modification of the judgment.

## I. *Factual and Procedural Background*

On January 24, 1981, the petitioner, Randy L. May, pled guilty to first degree murder and assault with intent to commit first degree murder. Pursuant to a plea agreement, the petitioner was ordered to serve two concurrent life sentences. As part of the judgment of conviction, the trial court declared the petitioner "infamous in Count One [first degree murder]."

Since his conviction, the petitioner has been incarcerated in the Northeast Correction Complex in Mountain City, Tennessee. In 2005, he filed a pro se petition for writ of habeas corpus seeking relief from the judgment on the ground that the legislature, at the time of the offenses, had not classified first degree murder as an infamous crime.

The trial court summarily dismissed the petition, holding that the conviction was not void and the sentence had not expired. Upon direct appeal, the order of dismissal was affirmed. While acknowledging that an erroneous pronouncement of infamy should be subject to correction, the Court of Criminal Appeals ruled that a statute enacted after the petitioner's conviction and which declared first degree murder to be an infamous crime could be applied retroactively.

In this appeal, the petitioner argues that he is entitled to habeas corpus relief from the erroneous judgment of infamy. Tenn. Code Ann. § 40–2712 (1980) (listing the crimes of infamy). He posits that the erroneous declaration of infamy has "worked to restrain [his] liberty to exercise [the] fundamental right" to vote, which is guaranteed by the Tennessee Constitution. *See* Tenn. Const. art. I, § 5 (stating the right of suffrage shall never be denied to any person entitled "except upon conviction by a jury of some infamous crime, previously ascertained and declared by law");[1] Tenn. Const. art. I, § 11 (prohibiting laws "made for the punishment of acts committed previous to the existence of such laws, and by them only declared criminal").

While conceding that the judgment is partly in error, the State argues that because the declaration of infamy is a "mere" collateral consequence of the judgment and does not restrain the petitioner of his liberty, he lacks standing to contest the erroneous designation of infamy. In the alternative, the State submits that even if

---

**1.** State law provides a procedure by which a person "rendered infamous" may seek restoration of their rights of citizenship, including the right to vote and hold public office. Tenn. Code Ann. § 40–29–101 to –205 (2006).

the petitioner is entitled to relief, it should only be to the extent of vacating the illegal portion of the judgment and not the underlying conviction and sentence.

## II. *Scope of Review*

 Whether to grant relief upon review of a petition for habeas corpus relief is a question of law. *Smith v. Lewis*, 202 S.W.3d 124, 127 (Tenn.2006) (citing *Hart v. State*, 21 S.W.3d 901, 903 (Tenn.2000)). Our review is, therefore, de novo with no presumption of correctness given to the findings and conclusions of the court below. *Id.* (citing *Hogan v. Mills*, 168 S.W.3d 753, 755 (Tenn.2005)). "Because this is a habeas corpus proceeding, we are limited to considering the face of the judgment and the record of the proceedings upon which the judgment was rendered." *Id.* at 128.

## III. *Habeas Corpus*

Of common law origin and extending over hundreds of years, the "Great Writ" of habeas corpus is documented in American law by Article I, Section 9, Clause 2, of the United States Constitution: "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." *Ex parte Bollman*, 4 Cranch 75, 8 U.S. 75, 2 L.Ed. 554 (1807). By the passage of the Judiciary Act of 1789, Congress granted courts the statutory authority to issue the writ. Act of Sept. 24, 1789, ch. 20, § 14, 1 Stat. 73, 81–82. Under the federal statutes governing the procedure, the power to grant the writ is limited. 28 U.S.C. § 2241(c) (Supp. 2006). To qualify for consideration of the

merits of the claim, a federal prisoner must be "in custody." 28 U.S.C. § 2241(c)(1), (3). Similarly, federal courts have jurisdiction to grant habeas corpus relief when a prisoner is "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a) (2000). The United States Supreme Court has interpreted this "statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490–91, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989).[2] That interpretation has been extended to include consecutive sentences "in the aggregate, not as discrete segments." *Garlotte v. Fordice*, 515 U.S. 39, 47, 115 S.Ct. 1948, 132 L.Ed.2d 36 (1995) (one serving consecutive state sentences is "in custody" and may make a habeas corpus attack on the first of the sentences, even after it has expired, until all sentences have been served).

For federal courts to exercise the power of habeas corpus over a state prisoner, the prisoner must have "exhausted the remedies available in the courts of the State" or have demonstrated that "there is an absence of available State corrective process." 28 U.S.C. § 2254(b)(1)(A)(B)(i). Under the federal interpretation, the "in custody" language as applied to an attack on state convictions does not always require physical confinement for consideration on the merits. For example, parole status has met the threshold requirement for habeas corpus relief. *Jones v. Cunningham*, 371 U.S. 236, 242–43, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). Further, in *Carafas v. LaVallee*, 391 U.S. 234, 239, 88

**2.** Nevertheless, Maleng was deemed to be in constructive "custody," as in *Peyton v. Rowe*, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968), and was permitted to proceed with his habeas corpus attack on a 1958 conviction because he was subject to a detainer under an unserved state conviction. *Cf. Daniels v. United States*, 532 U.S. 374, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001); *Lackawanna County Dist. Attorney v. Coss*, 531 U.S. 923, 121 S.Ct. 297, 148 L.Ed.2d 238 (2000).

S.Ct. 1556, 20 L.Ed.2d 554 (1968), the prisoner filed for habeas corpus relief before the expiration of his sentence but was released during the course of the appeal. The Supreme Court ruled that jurisdiction had attached at filing and permitted the action despite a claim of mootness by the government, ruling that the collateral consequences to the conviction, which precluded voting, holding public office, serving as juror, and other rights of citizenship, defeated the mootness defense.[3]

■ In this state, habeas corpus is guaranteed by article I, section 15 of the Tennessee Constitution: "[T]he privilege of the writ of Habeas Corpus shall not be suspended, unless when in case of rebellion or invasion, the General Assembly shall declare the public safety requires it." Tenn. Const. art. I, § 15; *Faulkner v. State*, 226 S.W.3d 358, 361 (Tenn.2007). Although our writ of habeas corpus is constitutionally guaranteed, it has been regulated by statute for almost one hundred fifty years. Code of Tennessee §§ 3720 to 3765 (Return J. Meigs & William F. Cooper eds., E.G. Easterman & Co. 1858); *Faulkner*, 226 S.W.3d at 361 (citing *Ussery v. Avery*, 222 Tenn. 50, 432 S.W.2d 656, 657 (Tenn.1968)). The statute broadly states that "[a]ny person imprisoned or restrained of liberty, under any pretense whatsoever, except in cases [in which federal courts have exclusive jurisdiction], may prosecute a writ of habeas corpus, to inquire into the cause of such imprison-

ment and restraint." Tenn.Code Ann. § 29–21–101 (2000).[4] The procedural requirements, as prescribed by statute, "are mandatory and must be followed scrupulously." *Archer v. State*, 851 S.W.2d 157, 165 (Tenn.1993).

■ Although habeas corpus in this state receives constitutional and statutory guarantees, this Court has ruled that the writ may be granted "only when it appears upon the face of the judgment or the record of the proceedings upon which the judgment is rendered that a court lacked jurisdiction or authority to sentence a defendant or that the sentence has expired." *Stephenson v. Carlton*, 28 S.W.3d 910, 911 (Tenn.2000). Stated differently, a petitioner must demonstrate that the judgment is "void" and not merely "voidable." *Smith*, 202 S.W.3d at 127 (citing *Hogan*, 168 S.W.3d at 755). An illegal sentence, one whose imposition directly contravenes a statute, is considered void and may be set aside at any time. *State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn.1978) (holding that even after a judgment becomes final, a trial judge has "the power and duty" to correct any illegality). Thus, when an illegality in the sentence is evident on the face of the record of the underlying proceeding, it is a nullity. *Smith*, 202 S.W.3d at 127.

## IV. *Analysis*

The petitioner contends that the declaration of infamy incident to his conviction

---

**3.** It is clear that petitioner's cause is not moot. In consequence of his conviction, he cannot engage in certain businesses; he cannot serve as an official of a labor union for a specified period of time; he cannot vote in any election held in New York State; he cannot serve as a juror. Because of these 'disabilities or burdens (which) may flow from' petitioner's conviction, he has 'a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him.' *Fiswick v. United States*, 329

U.S. 211, 222, 67 S.Ct. 224, 230, 91 L.Ed. 196 (1946). On account of these 'collateral consequences,' the case is not moot.

*Carafas*, 391 U.S. at 237–38, 88 S.Ct. 1556 (footnotes omitted).

**4.** The most basic principle of statutory construction is to ascertain the natural and ordinary meaning of the language. *See, e.g., Tuggle v. Allright Parking Sys., Inc.*, 922 S.W.2d 105, 107 (Tenn.1996).

of first degree murder was void because the trial court had no statutory authority to include that as a part of the judgment. In support of his claim, he asserts that at the time of the offense and his subsequent conviction and sentence, murder and assault with intent to commit murder were not listed as infamous crimes under Tennessee Code Annotated section 40–2712 (1980).

■ In 1980, the statute provided an exhaustive list of infamous crimes, including the following:

> abusing a female child, arson and felonious burning, bigamy, burglary, felonious breaking into a business house, outhouse other than a dwelling house, bribery, buggery, counterfeiting, violating any of the laws to suppress the same, forgery, incest, larceny, horse stealing, perjury, robbery, receiving stolen property, rape, sodomy, stealing bills of exchange or other valuable papers, subornation of perjury, and destroying a will.

*Id.*

The terms of this legislation provided that upon conviction of any of these crimes, "it shall be part of the judgment of the court that the defendant be [declared] infamous," a status that precluded the right of suffrage. *Id.* As demonstrated, however, homicide was *not* a crime of infamy at the time the petitioner committed the offense. *See Williams v. State*, 520 S.W.2d 371, 376 (Tenn.Crim.App.1974) (stating that homicide was not an infamous crime at that time). As a result, the trial court lacked statutory authority to declare

the petitioner infamous. We must conclude, therefore, that the declaration of infamy was in direct contravention of the statute. *See Smith*, 202 S.W.3d at 128.

It is noteworthy that in the year following the petitioner's convictions, our legislature expanded the relevant statutory section to provide that *any* felony conviction would result in a declaration of infamy. *See Gaskin v. Collins*, 661 S.W.2d 865, 866 (Tenn.1983). As a result, since May 18, 1981 (only four months after the petitioner's convictions), all felonies, regardless of severity, have qualified as "infamous crimes." Tenn.Code Ann. § 40–20–112 (1991). Although the legislature directed that this statute be applied retroactively, *see* Tenn.Code Ann. §§ 2–2–139(b), 2–19–143(4) (1981), this Court struck down that provision in 1983, holding that a retroactive disenfranchisement of voting rights violated article I, section 5 of the Tennessee Constitution. *Gaskin*, 661 S.W.2d at 867.[5] Thus, the 1981 amendment to the statute is not applicable to the petitioner and did not serve to cure the illegality of that component of the sentence.

■ While admitting that a restraint on one's liberty as used in Tennessee Code Annotated section 29–21–101 "encompasses situations beyond actual physical custody," the State argues that notwithstanding the illegality, the petitioner lacks standing and cannot be granted any relief unless there is some "restraint upon ... freedom of action or movement." *See Hickman v. State*, 153 S.W.3d 16, 23 (Tenn.2004). The State submits that the label of infamy

---

**5.** Gaskin, who had fully served a sentence for manufacturing marijuana, challenged the propriety of the statute when his voter registration was revoked. On behalf of a unanimous court, Justice Frank Drowota wrote that

> the 1870 constitutional convention was comprised of men who had known the injustice of retroactive disenfranchisement

[during Reconstruction] and were determined to safeguard ... future generations from similar acts of repression. That this right was preserved by constitutional amendment rather than legislative enactment accentuates its importance to the people of the State of Tennessee.

*Gaskin*, 661 S.W.2d at 868.

appearing on the face of the judgment neither confines nor restrains the petitioner, and argues it is the perfectly valid sentence of life imprisonment that places the restraint on his freedom of action or movement. *See id.* The State concludes that "restraint of liberty" simply does not encompass voting rights, and that such a restriction is merely a "collateral consequence of the challenged judgment."

■ As stated, the essential purpose of a writ of habeas corpus is to subject imprisonment or any other restraint on liberty, for whatever cause, to judicial scrutiny. *Faulkner,* 226 S.W.3d at 361 (citing *Peyton v. Rowe,* 391 U.S. 54, 58, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968)); *see also* Tenn.Code. Ann. § 29–21–101. We must consider, therefore, whether an illegal disenfranchisement of the right to vote is the sort of wrong that the writ of habeas corpus was designed to correct. In *Summers v. State,* this Court explained the categories of restraints for which relief can be sought through the writ of habeas corpus:

> To obtain habeas corpus relief, a petitioner must be "imprisoned or restrained of liberty." "Imprisoned" refers to actual physical confinement or detention. "Restrained of liberty" is a broader term and encompasses situations beyond actual physical custody. However, a petitioner is not restrained of liberty unless the challenged judgment itself imposes a restraint on the petitioner's freedom of action or movement.

212 S.W.3d 251, 257 (Tenn.2007) (citations omitted). Obviously, the petitioner is in prison for the very judgment under attack. Moreover, while the deprivation of the entitlement to vote does not fall under the definition of "imprisonment," the illegal

component of the judgment, the declaration of infamy, qualifies as a restraint on his liberty and his freedom to act.

■ In *Baker v. Carr,* the United States Supreme Court observed that "[a] citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the [Federal] Constitution. . . ." 369 U.S. 186, 208, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Our federal courts have described "the right to vote [a]s . . . a 'fundamental right'—indeed, the most fundamental right of all." *Blumstein v. Ellington,* 337 F.Supp. 323, 329 (M.D.Tenn.1970). Early in Tennessee's judicial history, this Court determined that persons invested with the right to vote can be deprived only "by due process of law." *State v. Staten,* 46 Tenn. (6 Cold.) 233 (Tenn.1869). Our Constitution guarantees its citizenry the right to vote pursuant to article I, section 5, protecting all except those convicted of infamous crimes.[6] That the entitlement is preserved in the Constitution rather than by legislative enactment underscores its importance to the people:

> The elections shall be free and equal, and the right of suffrage, as hereinafter declared, shall never be denied to any person entitled thereto, except upon conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by court of competent jurisdiction.

In this state, conviction of an infamous crime is absolutely essential to any denial of the fundamental right to vote. *See also Gaskin,* 661 S.W.2d at 866–67 (stating that voting rights can be denied only upon conviction of an infamous crime, previously ascertained and declared by law). More-

---

**6.** In contrast, Amendment 15 to the United States Constitution makes no reference to dis-

qualification by infamy.

over, this Court has repeatedly observed that the phrase "restrained of liberty" includes any limitation placed on a person's freedom of action, including such restraints as conditions of "parole or probation." *Benson v. State,* 153 S.W.3d 27, 31 (Tenn.2004); *State ex rel. Dillehay v. White,* 217 Tenn. 524, 398 S.W.2d 737, 738 (1966) (holding that even though the petitioner was on bail, habeas corpus is permitted to test the legality of the restraint on liberty).

Even though the federal statutes governing habeas corpus restrict the remedy to only those "in custody," imprisonment, as previously indicated, is not always a prerequisite for relief. Years ago, our nation's highest court confirmed the flexible nature of the writ. *Wade v. Mayo,* 334 U.S. 672, 681, 68 S.Ct. 1270, 92 L.Ed. 1647 (1948). More recently, the high court observed that "[h]istory, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient ... to support the issuance of habeas corpus." *Jones,* 371 U.S. at 240, 83 S.Ct. 373. In *Jones,* the Supreme Court considered whether a Virginia prisoner, who had been paroled, was "in custody" within the federal habeas corpus statute and thus was entitled to invoke habeas corpus jurisdiction of the United States District Court. *Id.* at 243, 83 S.Ct.

373; *see* 28 U.S.C. § 2241. Due to the restrictions placed on his parole, the Court determined that the "Great Writ" could be invoked, allowed the petitioner to test the legality of the judgment, and framed the appropriate question to be whether the conditions "significantly restrain petitioner's liberty to do those things which in this country free men are entitled to do." *Id.* at 242–43, 83 S.Ct. 373.

A "collateral consequence" of an illegality in a judgment is not always so significant as to warrant habeas corpus relief. Further, the petitioner, having committed egregious crimes and serving concurrent life sentences, is hardly a sympathetic figure. But as a matter of precedent applicable to all citizens, the writ should be available to those whose liberties are restrained by an illegality in a judgment. The right to vote, so precious to Tennesseans during the Reconstruction Era, qualifies today as a fundamental liberty in a representative government and, when illegally abridged, should be restored through the "Great Writ." [7]

Years ago, in *State v. McCraw,* 551 S.W.2d 692, 694 (Tenn.1977), this Court specifically addressed the right to vote as a "restraint on liberty." McCraw was convicted of extortion in Tennessee and, after completing his sentence, moved to Georgia. When he was denied the right to vote in that state, he sought post-conviction relief here.[8] In construing the term "in custo-

**7.** Texas recognizes restraints beyond actual confinement. For example, in *Tatum v. State,* 846 S.W.2d 324 (Tex.Crim.App.1993), the Texas high court confirmed that a void judgment may "have ... collateral consequences in some future proceeding" and, if so, may be subject to habeas corpus attack even if the term has been served and the fine paid. *Id.* at 327; *see also Ex parte Ormsby,* 676 S.W.2d 130 (Tex.Crim.App.1984); *Ex parte Phelper,* 433 S.W.2d 897 (Tex.Crim.App.1968); and *Ex parte Jordan,* 659 S.W.2d 827 (Tex.Crim.App.1983). Denial of entry in the military and

prohibitions against any opportunity to become a law officer have been deemed restraints on liberty in Texas subject to a petition for habeas corpus. *Ex parte Davis,* 748 S.W.2d 555 (1988); *State v. Collazo,* —— S.W.3d ——, No. 01–06–01076–CR, 2007 WL 3227611 (Tex.Ct.App. Nov. 1, 2007).

**8.** Today, the statute of limitations enacted in 1986 and reduced in length to one year in 1995, would preclude use of the Tennessee post-conviction procedure in these circumstances. Tenn.Code Ann. § 40–30–102(a)

dy," a prerequisite for relief eligibility under the Post–Conviction Procedure Act of 1967, this Court ruled that a prohibition on the right to vote so qualified, describing the prohibition, perhaps not by coincidence, as a "restraint on liberty." *Id.* As noted in *Hickman*, however, the term "in custody" is more broadly construed in the post-conviction context than either "imprisoned" or "restrained of liberty" under our habeas corpus statute. *Hickman*, 153 S.W.3d at 23 n. 4. Despite the more restrictive interpretation of the threshold requirements for habeas corpus consideration, the holding in *McCraw* provides at least some perspective as to what collateral restraints beyond imprisonment might qualify for the remedy.

There should be no wrong under our law without redress. *Bob v. State*, 10 Tenn. (2 Yer.) 173, 176 (1826). When an illegality exists within the judgment itself, some procedural recourse should be available. While acknowledging the wrongful declaration of infamy in this case, the state has offered no relief. To date, our courts have not done so. To plead procedural bar, as the dissent suggests (in hopes of a magnanimous gesture through an untested process), offers no just conclusion. In *Cummings v. State*, 142 N.M. 656, 168 P.3d 1080, 1087 (N.M.2007) (holding that habeas corpus may not be used to restore a prisoner's right to vote when the district court wrongfully informed the county court that the petitioner was a felon), the New Mexico Supreme Court rendered an opinion that is distinguishable from the circumstances at issue today. In that case, a clerical error, based upon a mistaken interpretation of a valid judgment, purged Cummings from the voter registration roll: "[S]ending his name to the voter registra-

tion section of the county clerk's office was erroneous." *Id.* at 1086. Here, the judgment of conviction included an illegality. Under similar circumstances, we have held that habeas corpus is the proper procedure for challenging an illegality in the judgment document. *Moody v. State*, 160 S.W.3d 512, 515 (Tenn.2005) (judgment required registration of a sexual offender, despite the lack of statutory authority for the crime committed). This Court confirmed the principle that an illegality in a judgment may be corrected at any time. *Id.* at 516.

Habeas corpus has vitality in this state and, in our assessment, "is not a 'static, narrow, formalistic remedy,' but one which must retain the 'ability to cut through barriers of form and procedural mazes.' 'The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that ... [in]justice[s] within its reach are surfaced and corrected.'" *Hensley v. Mun. Court*, 411 U.S. 345, 349–50, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) (quoting *Jones*, 371 U.S. at 243, 83 S.Ct. 373, and *Harris v. Nelson*, 394 U.S. 286, 291, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969)). While not every collateral consequence qualifies as a restraint on liberty, we should not "suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements." *Id.* at 350, 93 S.Ct. 1571.

The petitioner is entitled to no remedy other than a correction of the judgment, thereby regaining, in his words, the "constitutionally-protected, fundamental right of suffrage as provided in Article I, Section 5 of the Tennessee Constitution." He should be granted relief from the declaration of infamy, but nothing more.[9] The

---

(2006). There is no statute of limitations in state habeas corpus.

**9.** "A vote is like a rifle: its usefulness depends upon the character of the user." Theodore

conviction and term of incarceration remain intact. *See Smith,* 202 S.W.3d at 130 (stating that an original judgment of sentence was void on its face and warranted habeas corpus relief, but legality of conviction entered pursuant to guilty plea upheld); *see also State v. Stephenson,* 195 S.W.3d 574, 593 (Tenn.2006) (stating that a first degree murder conviction "remained valid and in effect" even though habeas court on remand declared the accompanying sentence null and void).

## V. *Conclusion*

Laws disenfranchising convicted felons are penal in nature. Retroactive application of the statute declaring all felonies infamous crimes is not permissible. *See Gaskin,* 661 S.W.2d at 867. Because the right to vote is fundamental to the concept of liberty in this state, an erroneous label of infamy in a judgment of conviction warrants remedy and should be declared null and void.[10] The petitioner is entitled to habeas corpus relief. We vacate the portion of the judgment labeling the petitioner infamous. The cause is remanded to the Johnson County Circuit Court for entry of a corrected judgment.

It appearing that the petitioner is indigent, the costs of this cause are taxed to the State of Tennessee.

WILLIAM C. KOCH, JR., J., with whom CORNELIA A. CLARK, J., joins, dissenting.

WILLIAM C. KOCH, JR., J., with whom CORNELIA A. CLARK, J., joins, dissenting.

I agree with the Court's conclusion that the portion of the 1981 judgment declaring Randy L. May infamous is contrary to Tenn.Code Ann. § 40–2712 (1975) (amended 1981).[1] However, I cannot concur with the Court's dramatic expansion of the application of the "great and efficacious"[2] writ of habeas corpus in this case. Until today, it had been well settled that the writ did not apply to collateral consequences of a criminal conviction or to circumstances that did not involve imprisonment or a "restraint of liberty" as that concept had been understood at common law. Rather than recognizing a brand new classification of collateral consequences in order to provide Mr. May relief, this Court should simply leave Mr. May to pursue his other, well-established plain, adequate, and speedy remedies.

## I.

In July 1980, Randy L. May committed first degree murder and assault with intent to commit first degree murder. On January 24, 1981, he pled guilty in the Criminal Court for Hamblen County to

---

Roosevelt, *An Autobiography* 153 (BiblioBazaar 2007) (1910).

**10.** In our view, the Court of Criminal Appeals incorrectly relied on prior cases to hold that "an erroneous pronouncement of infamy does not strike at the jurisdictional integrity of the sentence (life imprisonment) or the conviction (first degree murder)." *May v. Carlton,* E2006–00308–CCA–R3–HC, 2007 WL 241025, at *1 (Tenn.Crim.App. Jan.29, 2007) (citing *Humphreys v. State,* 531 S.W.2d 127, 139 (Tenn.1975); *Williams v. State,* 520 S.W.2d 371, 376 (Tenn.1974)) (*perm. app. denied* (Tenn.1975)). In both *Humphreys* and

*Williams,* the appeal process provided an opportunity for the modification of judgment. In this case, the petitioner pled guilty, no appeal was available, and no procedure other than habeas corpus was available to the petitioner to obtain relief from the illegality in the sentence.

**1.** This statute, as amended, is currently codified at Tenn.Code Ann. § 40–20–112 (2006).

**2.** William Blackstone, 3 Commentaries *131 (hereinafter Blackstone).

both offenses and was sentenced to two life sentences to be served concurrently in the custody of the Tennessee Department of Correction. The judgment of conviction stated that Mr. May was "rendered infamous" with regard to his first degree murder conviction, even though first degree murder was not an infamous crime under Tenn.Code Ann. § 40–2712.

In November 2005, Mr. May filed a pro se petition for writ of habeas corpus in the Circuit Court for Johnson County, asserting that he was "being restrained of his liberty" as a direct result of the actions of the Criminal Court for Hamblen County. He insisted that the judgment for first degree murder was void because it was "in direct contravention of ... Tenn.Code Ann. § 40–2712." While Mr. May argued in an accompanying memorandum of law that he had "presently been denied the fundamental right of voting for over twenty-four (24) years," he did not allege that he had ever attempted to vote or even to register to vote or that he had been prevented from registering to vote or from voting because of his 1981 conviction.

The Department of Correction filed a motion to dismiss Mr. May's petition because it failed to state a colorable claim for habeas corpus relief. The Department relied, in part, on *Taylor v. State*, No. 01A01–9707–CH–00338, 1999 WL 58599, at *2 (Tenn.Ct.App. Feb.9, 1999), *perm. app. dismissed* (Tenn. Oct. 11, 1999), in which the Tennessee Court of Appeals held that "the laws disenfranchising convicted felons are simply remedial statutes and are not laws that invoke or increase criminal penalties." On January 24, 2006, the trial court granted the Department's motion, stating that "[n]othing in the petition would support a finding ... that [the]

petitioner's conviction is void or that his sentence has expired."

On January 29, 2007, the Tennessee Court of Criminal Appeals affirmed the dismissal of Mr. May's petition. The court concluded that "an erroneous pronouncement of infamy does not strike at the jurisdictional integrity of the sentence (life imprisonment) or the conviction (first degree murder)." *May v. Carlton*, No. E2006–00308–CCA–R3–HC, 2007 WL 241025, at *1 (Tenn.Crim.App. Jan.29, 2007). We granted Mr. May's application for permission to appeal.

## II.

The courts of England recognized several varieties of the writ of habeas corpus.[3] The purpose of the writ of *habeas corpus ad subjiciendum* was to provide a legal process by which the common-law courts could review and determine the legality of the physical detention of a person who petitioned for relief. *Preiser v. Rodriguez*, 411 U.S. at 484, 93 S.Ct. 1827; Herbert Wechsler, *Habeas Corpus and the Supreme Court: Reconsidering the Reach of the Great Writ*, 59 U. Colo. L.Rev. 167, 167 (1988). It is this version of the writ of habeas corpus that is at issue in this case.

The writ of habeas corpus was brought to America by the colonists and was considered to be among the fundamental rights that had descended from their ancestors. *Ex Parte Yerger*, 75 U.S. (8 Wall.) 85, 95, 19 L.Ed. 332 (1869). Not surprisingly, the drafters of the United States Constitution decided to limit the power of Congress to suspend the "privilege of the writ of habeas corpus" in Article I, Section 9, Clause 2. This provision implicitly recognized the power of the fed-

---

**3.** *Preiser v. Rodriguez*, 411 U.S. 475, 484–85 & n. 2, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Ex Parte Bollman*, 8 U.S. (4 Cranch) 75, 84, 95, 98–99, 2 L.Ed. 554 (1807); Blackstone *129–30.

eral courts to issue writs of habeas corpus. However, it was not until Congress enacted the Judiciary Act of 1789[4] that the courts were given the express power to issue the writ.

The incorporation of the writ of habeas corpus into the law of Tennessee followed a path that paralleled its federal counterpart. Using language virtually identical to that found in the United States Constitution, the drafters of Tennessee's Constitution of 1796 limited the power of the General Assembly to suspend the writ of habeas corpus in article XI, section 15[5] and, thereby, also implicitly recognized the power of the state courts to issue writs of habeas corpus. The General Assembly, however, did not turn its attention to the writ for the next sixty years.[6]

In 1858, the General Assembly enacted a code containing statutes defining the scope of the writ of habeas corpus that could be granted by state courts and the procedures surrounding the use of the writ.[7] These statutes, with only minor amendments, have been in force for almost one hundred and fifty years and are currently codified at Tenn.Code Ann. §§ 29–21–101 to –130 (2000). With certain exceptions not applicable to this case, Tenn.Code Ann. § 29–21–101 permits "[a]ny person imprisoned or restrained of liberty, under any pretense whatsoever" to file a petition for writ of habeas corpus "to inquire into the cause of such imprisonment and restraint."

Neither article I, section 15 of the Tennessee Constitution nor Tennessee's habeas corpus statutes define the term "habeas corpus."[8] However, the courts of Tennessee, like other courts, have ascertained its meaning and have derived the principles governing the use of the writ of habeas corpus from the Habeas Corpus Act of 1679,[9] the decisions of the English courts interpreting the Act, and the history of habeas corpus both in England and in the United States. *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 375–76, 9 L.Ed.2d 285 (1963); *Ex Parte Parks*, 93 U.S. 18, 21–22, 23 L.Ed. 787 (1876); *Appendix*, 35 Tenn. at 699–726.

In its historic form, the writ of habeas corpus was a remedy against unjust detention. *Renney v. Mayfield*, 5 Tenn. (2 Hayw.) 165, 169–70 (1817). The writ put at issue only the disposition of the custody of a prisoner. It did not extend to questions that could not affect the lawfulness of the prisoner's custody or detention and that would not result in the prisoner's release. *Preiser v. Rodriguez*, 411 U.S. at

---

4. Act of Sept. 24, 1789, ch. 20, § 14, 1 Stat. 73, 81–82.

5. The Declaration of Rights in article XI of the Constitution of 1796 became article I in the Constitutions of 1834 and 1870. Accordingly, article XI, section 15 of the Constitution of 1796, as revised, is now article I, section 15 of the Tennessee Constitution. It currently provides that "the privilege of the writ of Habeas Corpus shall not be suspended, unless when in the case of rebellion or invasion, the General Assembly shall declare the public safety requires it."

6. In an appendix to *State v. Malone*, 35 Tenn. (3 Sneed) 413 (1856), John T. Sneed, the Attorney General and Reporter of Tennessee, observed that "[i]n this state there is no practice upon this subject, established by statute, save certain meager provisions which chiefly relate to the enforcement of the attendance of witnesses...." *Appendix: The Writ of Habeas Corpus*, 35 Tenn. (3 Sneed) 699, 699 (1856) ("*Appendix*").

7. Code of Tennessee §§ 3720–3765 (Return J. Meigs & William F. Cooper eds., E.G. Eastman & Co. 1858) ("Code of 1858").

8. The term's literal interpretation is "that you may have the body." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 395 (2d ed.1995).

9. 31 Car. 2, c. 2 (Eng.).

484–88 & n. 7, 93 S.Ct. 1827; *State v. Malone,* 35 Tenn. at 416.

During the past two centuries, the application of the writ of habeas corpus has expanded beyond the writ's seventeenth and eighteenth century boundaries. Because of the writ's flexible nature,[10] the courts in both the United States and England have approved the use of the writ in circumstances in which the physical restraint is something less than actual incarceration or close confinement. *See, e.g., Jones v. Cunningham,* 371 U.S. at 238–39, 83 S.Ct. 373 (citing English cases approving the use of habeas corpus by persons who were not permitted to go where they pleased). However, the writ has not become unloosed from its historic moorings. Even the most expansive habeas corpus "precedents that have found a restraint on liberty rely heavily on the notion of a physical sense of liberty-that is, whether the legal disability in question somehow limits the putative habeas petitioner's movement." *Leslie v. Randle,* 296 F.3d 518, 522 (6th Cir.2002) (quoting *William-*

son v. Gregoire,* 151 F.3d 1180, 1183 (9th Cir.1998)).[11]

Tennessee's courts, at least until today, have construed Tenn.Code Ann. § 29–21–101 in a similar fashion. Forty years ago, this Court authorized a person who was not in custody but who was forbidden to leave Maury County to use a writ of habeas corpus to test the restraint on her freedom of movement. *State ex rel. Dillehay v. White,* 217 Tenn. 524, 527–28, 398 S.W.2d 737, 738 (1966). Similarly, just two years ago, this Court approved using a writ of habeas corpus to challenge the portion of a sentence requiring a defendant to register as a sexual offender. *Moody v. State,* 160 S.W.3d 512, 515–16 (Tenn.2005). While persons required to register as sexual offenders are not incarcerated, the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004 [Tenn.Code Ann. §§ 40–39–201 to –212 (2006 & Supp.2007)] imposes extensive physical limitations on their freedom of movement.[12] Accordingly, permitting a person to use a writ of habeas corpus to

---

**10.** *Wade v. Mayo,* 334 U.S. 672, 681, 68 S.Ct. 1270, 92 L.Ed. 1647 (1948).

**11.** *See also Quair v. Sisco,* No. 1:02–CV–5891 DFL, 2007 WL 1490571, at *3 (E.D.Cal. May 21, 2007) (stating that "no court has applied habeas corpus review in cases where the purported restraint does not limit the petitioner's geographic movement."); 1 Chester J. Antieau, *The Practice of Extraordinary Remedies: Habeas Corpus and Other Common Law Writs* § 1.08, at 18 (1987) (noting that it was sufficient at common law for habeas corpus petitioners to allege that they could not go where they pleased).

**12.** Tennessee's sexual offender registration statutes limit, with the force of criminal penalties, where a sexual offender may live and work. A sexual offender cannot knowingly (1) establish a primary or secondary residence or any other living accommodation, (2) obtain sexual offender treatment or attend a sexual

offender treatment program, or (3) accept employment within one thousand feet of the property line of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public. Tenn.Code Ann. § 40–39–211(a). Sexual offenders cannot knowingly reside within one thousand feet of the property line of their victims or victims' immediate families or be any closer than one hundred feet of a former victim at any time. Tenn.Code Ann. § 40–39–211(b). Nor, absent certain conditions, may a sexual offender knowingly establish his or her primary or secondary residence or any other living arrangement in a home occupied by a minor. Tenn.Code Ann. § 40–39–211(c). In addition, Tennessee's statutes impose extensive reporting requirements on sexual offenders when they move, accept employment, or become a student. Tenn.Code Ann. § 40–39–203(a)(1).

challenge the portion of a judgment requiring registration as a sexual offender is entirely consistent with *State ex rel Dillehay v. White's* approval of the use of the writ of habeas corpus to test the legality of a governmental restriction on the freedom of movement.

Thus, this Court has stated repeatedly that the phrase "restrained of liberty" in Tenn.Code Ann. § 29–21–101 refers to actions by a government that impose a restraint on a person's "freedom of action or movement." *See, e.g., Summers v. State,* 212 S.W.3d 251, 257 (Tenn.2007); *Benson v. State,* 153 S.W.3d 27, 31 (Tenn.2004). We have also held unequivocally, that "when the restraint on a petitioner's liberty is merely a collateral consequence of the challenged judgment, habeas corpus is not an appropriate avenue for seeking relief." *Hickman v. State,* 153 S.W.3d 16, 23 (Tenn.2004).[13]

## III.

The right to vote has been protected by the Constitution of Tennessee since the earliest days of statehood.[14] However, the Constitution of 1834 explicitly empowered the General Assembly to enact laws denying the right to vote to persons convicted of infamous crimes.[15] In response, the General Assembly enacted a statute depriving persons convicted of infamous crimes of their right to vote.[16] Less than one decade later, this Court characterized the right to vote as a "political right" that was not "inalienable" and that could be "forfeited for crime." *Ridley v. Sherbrook,* 43 Tenn. (3 Cold.) 569, 576 (1866). Four years after the decision in *Ridley v. Sherbrook,* the citizens of Tennessee ratified our current constitution which, like the Constitution of 1834, explicitly empowered the General Assembly to deny persons convicted of infamous crimes the right to vote.[17]

13. *See also e.g., Hutton v. State,* No. M2005–00585–CCA–R3–HC, 2005 WL 3487815, at *3 (Tenn.Crim.App. Dec.16, 2005) (No Tenn. R.App. P. 11 application filed) (noting that habeas is not an appropriate avenue for seeking relief from collateral consequences and concluding that an order for monetary restitution is a collateral consequence); *Willis v. Parker,* No. W2004–02063–CCA–R3–HC, 2005 WL 1996637, at *2–3 (Tenn.Crim.App. Aug.18, 2005) *perm. app. denied* (Tenn. Jan. 30, 2006) (rearticulating that habeas is not an appropriate route to seek relief from collateral consequences and that, as indicated in *Hickman v. State,* this includes enhancements of a sentence as a result of previous offenses that are being challenged); *Blanchard v. State,* No. W2004–01801–CCA–R3–HC, 2005 WL 1154343, at *2–3 (Tenn.Crim.App. May 13, 2005) (No Tenn. R.App. P. 11 application filed) (same); *McDonald v. State,* No. M2004–02197–CCA–R3–HC, 2005 WL 94469, at *1 (Tenn.Crim.App. Jan.12, 2005) (No Tenn. R.App. P. 11 application filed) (stating that habeas is not an appropriate avenue for seeking relief from collateral consequences and concluding that being prevented from pursuing gainful employment as an engineer and educator constitutes a collateral consequence); *Robinson v. Bell,* No. M2003–02772–CCA–R3–HC, 2004 WL 2290485, at *4 (Tenn.Crim.App. Oct.12, 2004) *perm. app. denied* (Tenn. Jan. 18, 2005) (see *Willis v. Parker* above); *State v. Godsey,* 165 S.W.3d 667, 673–74 (Tenn.Crim.App.2004) (indicating that habeas is not an appropriate avenue for seeking relief from collateral consequences and that revocation of driving privileges is a collateral consequence).

14. Tenn. Const. of 1796, art. XI, § 5, now found at Tenn. Const. art. I, § 5.

15. Tenn. Const. of 1834, art. IV, § 2.

16. Code of 1858 § 5226. Prior to the enactment of this statute, the General Assembly had enacted a statute that prohibited persons rendered infamous from holding public office or testifying as witnesses. Act of Dec. 9, 1829, ch. XXIII, § 71, 1829 Tenn. Pub. Acts 27, 42.

17. Tenn. Const. art. I, § 5 and Tenn. Const. art. IV, § 2.

When Mr. May was convicted in 1981, declarations of infamy were controlled by Tenn.Code Ann. § 40–2712. The statute imposed various "civil disabilities,"[18] such as disenfranchisement, upon persons who were convicted of certain infamous crimes. The statute "designate[d] a particular civil disability that occurs upon the conviction and remains in effect throughout the defendant's life unless restored by a specific statutory procedure." *Cole v. Campbell,* 968 S.W.2d at 276.

In Tennessee, a declaration of infamy is currently incidental to a felony conviction. *See* Tenn.Code Ann. § 40–20–112. A trial court has no discretion about whether to enter a judgment of infamy. *Cambria Coal Co. v. Teaster,* 179 Tenn. 472, 475, 167 S.W.2d 343, 344 (1943). Although arguably penal in intent, the declaration of infamy is not one of the arrows in the trial court's sentencing quiver, nor is it one of the prosecutor's bargaining chips in the plea bargaining process. Rather, it is a legislatively imposed consequence of being convicted of certain crimes. The trial court must declare a convicted defendant infamous separately from, irrespective of, and in addition to any sentence or sentences ordered to be served. The concomitant loss of voting rights survives the expiration of the defendant's sentence and remains in full force and effect after the

defendant is no longer in custody until the defendant's civil rights are restored in accordance with Tenn.Code Ann. §§ 40–29–101 to –205 (2006). Significantly, the later restoration of voting rights has no impact on the underlying conviction.

Although this Court has yet to set forth a calculus for determining what constitutes a "collateral consequence" of a criminal conviction, the imposition of a civil disability is just that. This case makes the point because Mr. May is not attacking his conviction or his sentence. He is seeking only to remedy the collateral consequence of being rendered infamous. Restoring Mr. May's right to vote will have absolutely no effect on the validity of his convictions or the duration or conditions of his confinement.

## IV.

The pivotal question in this case is whether Mr. May has alleged a restraint on his liberty[19] that entitles him to habeas corpus relief under Tenn.Code Ann. § 29–21–101. In light of centuries of case law defining the scope of habeas corpus, the government's interference with a prisoner's right to vote is not the sort of restraint on liberty that will trigger habeas corpus relief.[20] In a recent decision on this very issue, the New Mexico Supreme

---

**18.** *State v. Johnson,* 79 S.W.3d 522, 527 (Tenn.2002); *Cole v. Campbell,* 968 S.W.2d 274, 275–77 (Tenn.1998).

**19.** Whether his 1981 judgment of conviction has actually interfered with Mr. May's right to vote is questionable. He has not alleged, nor does the record indicate, that he has ever attempted to register to vote or to vote since 1981 or that he has been prevented from doing so because of his 1981 conviction. Other courts have found that persons who have been rendered infamous but who have not attempted to vote or to register to vote have not presented a justiciable issue for the courts to decide. *Thiess v. State Admin. Bd.*

*of Election Laws,* 387 F.Supp. 1038, 1040–41 (D.Md.1974).

**20.** The Court relies on *State v. McCraw,* 551 S.W.2d 692 (Tenn.1977) to justify its dramatic expansion of the scope of habeas corpus relief. The Court's reliance on this case, to the extent that it remains valid, is misplaced. The *McCraw* case involves a resident of Georgia who could not register to vote in Georgia because he had been convicted of a crime in Tennessee. He decided to file a petition in Tennessee under the Post–Conviction Relief Act to challenge his Tennessee conviction. At that time, Tenn.Code Ann. § 40–3802 (1975) (repealed 1995), required persons filing post-conviction petitions to be "in custody." This

Court, noting that the writ of habeas corpus is not a "one-stop shop for a prisoner's grievances," held that being denied the right to vote is a collateral consequence of a prisoner's conviction and that the writ of habeas corpus does not provide a vehicle for relief from a clerical error in a judgment that resulted in a prisoner being denied the right to vote. *Cummings v. State,* 142 N.M. 656, 168 P.3d 1080, 1086–87 (N.M.2007).[21]

The courts are obligated to permit the use of the writ of habeas corpus only within the limits set by the General Assembly and the Constitution of Tennessee. It is generally agreed that the deprivation of the right to vote is simply a collateral consequence of a criminal conviction. *See State v. Johnson,* 79 S.W.3d 522, 527 (Tenn.2002); *see also, e.g., Maleng v. Cook,* 490 U.S. 488, 491–92, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989); *Carafas v. LaVallee,* 391 U.S. 234, 237, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); *Lebron v. Comm'r of Corr.,* 274 Conn. 507, 876 A.2d 1178, 1191–93 & n. 16 (Conn.2005); *Duran v. Morris,* 635 P.2d 43, 45 (Utah 1981); Special Project, *The Collateral Consequences of a Criminal Conviction,* 23 Vand. L.Rev. 929, 975–87 (1970). Accordingly, mindful of the

Court held that for the purposes of the Post–Conviction Relief Act, the petitioner was "in custody" because of the collateral consequences of his Tennessee conviction. *State v. McCraw,* 551 S.W.2d at 694.

The *McCraw* case has little relevance here. Relief under the Post–Conviction Relief Act and relief under the habeas corpus statutes are like apples and oranges. In fact, the Post–Conviction Relief Act was passed in order to provide more relief than was available under the habeas corpus statutes. *Luttrell v. State,* 644 S.W.2d 408, 408–09 (Tenn.Crim. App.1982). Thus, it does not necessarily follow that a person who is eligible for relief under the Post–Conviction Relief Act would also be eligible for habeas corpus relief. *See Hickman v. State,* 153 S.W.3d at 23 n. 4. In fact, under current law, neither Mr. McCraw nor Mr. May would be eligible for relief under the Post–Conviction Procedure Act because they did not file their petitions within one year after their convictions became final. Tenn.Code Ann. § 40–30–102(a) (2006).

The pivotal issue in this case is not whether Mr. May is "in custody." He surely is. The question is whether, because of his judgment of infamy, Mr. May is "imprisoned or restrained of liberty" for the purpose of Tenn. Code Ann. § 29–21–101. In light of the centuries of case law defining the scope of habeas corpus relief, he surely is not. While the collateral consequences of a criminal conviction might suffice for the purposes of post-conviction relief, we have already squarely held that they are not sufficient to warrant habeas corpus relief unless they result in a restraint on the freedom of movement. *See Hickman v. State,* 153 S.W.3d at 23.

**21.** The Court notes that the Texas courts have held that the writ of habeas corpus in Texas extends to collateral consequences of criminal convictions. These decisions, however, are of little value in Tennessee because the Texas legislature, unlike the legislatures in Tennessee and New Mexico, has defined the scope of the writ of habeas corpus much more broadly than the writ's common-law origins. *See, e.g.,* Tex.Code Crim. Proc. Ann. art. 11.21 to 11.23 (2005); *Ex Parte Snodgrass,* 43 Tex.Crim. 359, 65 S.W. 1061, 1062 (Tex.Crim.App.1901) (interpreting Texas's habeas corpus statute to apply to "any character or kind of restraint that precludes an absolute and perfect freedom of action on the part of relator authorizes such relator to make application to this court for release from said restraint").

The Texas legislature has opted to expand habeas corpus relief beyond its common-law roots, and the Texas courts have appropriately honored this legislative decision. While Tennessee's legislature is certainly free to similarly broaden the scope of the application of the writ of habeas corpus, it has not yet done so. We should not take it upon ourselves to expand the scope of the writ of habeas corpus in light of the long-standing canon of statutory construction providing that courts should not interpret statutes to displace the common law in the absence of clear legislative intent to do so. *Houghton v. Aramark Educ. Res., Inc.,* 90 S.W.3d 676, 679 (Tenn.2002); *Russell v. Colyar,* 51 Tenn. (4 Heisk.) 154, 159–62 (1871).

principle of stare decisis and of this Court's holding in *Hickman v. State* that restraints on liberty that are collateral consequences of criminal convictions are not proper subjects for habeas corpus relief, I would affirm the decisions of both the Court of Criminal Appeals and the trial court to deny Mr. May's petition.[22] The defect in Mr. May's judgment of conviction simply does not limit his liberty of movement in the physical sense.

In reaching this decision, I do not mean to suggest that Mr. May should be left without a remedy should his 1981 conviction actually prevent him from registering to vote or from voting.[23] The ancient maxim that there should be no wrong without a remedy [24] has application here. In light of the State's concession that Mr. May should not have been rendered infamous based on his 1981 judgment, I would follow the example of the New Mexico Supreme Court and suggest that no further litigation should be required. *Cummings v. State*, 168 P.3d at 1087. I see no reason to presume that the State will not act promptly by cooperating with Mr. May

should he attempt to register to vote or to vote. However, should further litigation become necessary, Mr. May has other, more established remedies available to him. Specifically, should Mr. May be unsuccessful in an effort to register to vote or to vote, he may file an action for declaratory judgment under Tenn.Code Ann. § 29–14–103 (2000) or a civil rights action under 42 U.S.C. § 1983. For these reasons, I respectfully dissent.

**R.D.S.**

v.

**22.** The Court's decision to expand habeas corpus jurisdiction in Tennessee relies heavily on decisions of the United States Supreme Court holding that a challenged conviction's collateral consequences may prevent a habeas corpus petition from becoming moot. *See, e.g., Carafas v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). Although the issues are often mistakenly blurred, the scope of habeas corpus jurisdiction and the mootness of a particular writ are separate and distinct questions. *Malloy v. Purvis*, 681 F.2d 736, 738 n. 1 (11th Cir.1982); *Harrison v. State of Ind.*, 597 F.2d 115, 117–18 (7th Cir.1979). The two questions—whether habeas corpus jurisdiction exists and whether a particular petition is moot—are analytically distinct and require different analysis. *Carafas v. LaVallee*, 391 U.S. at 237–38, 88 S.Ct. 1556 (distinguishing between mootness and "in custody" jurisdiction); *Oyler v. Allenbrand*, 23 F.3d 292, 293–94 (10th Cir.1994) (describing "in

custody" jurisdiction as "a separate and distinct jurisdictional question" from mootness); *Ward v. Knoblock*, 738 F.2d 134, 138–39 (6th Cir.1984); *Lebron v. Comm'r of Correction*, 274 Conn. 507, 876 A.2d 1178, 1192–94 & n. 17 (Conn.2005); *Commw. v. Ahlborn*, 453 Pa.Super. 124, 683 A.2d 632, 638–39 (Pa.Super.Ct.1996). That a collateral consequence may prevent a case from becoming moot does not answer the question of whether a petition falls within the scope of habeas corpus jurisdiction. Tennessee's statutes conferring habeas corpus jurisdiction do not confer power to entertain claims simply because they are not moot. *See Kravitz v. Commw. of Pa.*, 546 F.2d 1100, 1102 (3d Cir.1977).

**23.** Incarcerated persons who are eligible to vote may vote by absentee ballot. *Tate v. Collins*, 496 F.Supp. 205, 209–10 (W.D.Tenn. 1980).

**24.** *Bob v. State*, 10 Tenn. (2 Yer.) 173, 176 (1826).